SARAH H. BOSTWICK, RESPONDENT, *v.* ADOLPH FRANK-FIELD, APPELLANT.

*Contract of sale of land by landlord to tenant — effect of.*

In 1870 the defendant leased to one Thrall certain lots for three years, and verbally agreed to sell them to him at any time during the term for their fair market value.   Thrall entered into possession and erected a church with defendant's knowledge, by means of gifts and loans made to him.   April 28, 1871, a contract was made, by which defendant agreed to sell the lots to Thrall

for $35,000, which provided that if it were not carried out by Thrall by June 1, 1871, it should become void and of no effect. Thrall failed to carry it out by that date, and subsequent to the contract of sale rent was paid under the lease. March, 1872, defendant instituted summary proceedings for non-payment of rent, and was subsequently put into possession of the lots, and so remained until March, 1873, when he sold the lots for $52,500. *Held,*

That the contract entered into in April, 1871, did not have the effect of destroying the relation of landlord and tenant existing between the parties.

That all rights acquired thereunder ceased June 1, 1871.

That the effect of the summary proceedings was to restore the defendant to the possession and absolute ownership of the land, free from all claims and claimants arising under the lease or the contract.

APPEAL from a judgment in favor of the plaintiff, entered upon a trial of this action at Special Term.

June 1, 1870, defendant, being the owner of three lots of land on the north side of Fifty-seventh street, between Fourth and Lexington avenues, in the city of New York, together seventy-five feet wide in front by 100 feet in depth, made a lease thereof to George E. Thrall, for three years from that date, at $1,500 per annum, with privilege of another year at $2,000 per annum; lessee to pay taxes and assessments. At that time said Thrall was a clergyman, and contemplated putting a church building on said property, which purpose was known to defendant, and in view of which Thrall says that defendant verbally promised him to let him buy the property during the term of the lease at a fair market value.

In July, 1870, Thrall commenced to build his church, Frankfield, the defendant, being frequently present at the church building and advising with reference thereto. The building was finished February, 1871. Thrall's first intention had been to move a frame building on these lots, but the fire laws prevented, and the materials had to be taken down and used in the new structure.

Meanwhile, Thrall had obtained loans and gifts towards his church building. Mrs. Thrall, his wife (plaintiff's sister), had put in $4,500, in the manner explained, and the plaintiff had put in $1,000 or $1,200, and the building had cost $23,000 or $24,000.

April 28, 1871, after the building was finished, Thrall and defendant entered into a contract for the sale and purchase of the property for $35,000. The contract providing that, if it were not carried out by Thrall by June 1, 1871, it should become void and

of no effect. Thrall did not complete the purchase, and subsequent to the making of the contract of sale, money was paid as rent under the lease.

In October, 1871, Mrs. Thrall assigned her claim to plaintiff, and Thrall, thereupon (November 25, 1871) gave plaintiff his bond for $6,900, secured by mortgage on the lots, buildings, and on the lease of said church property, to cover the advances of both parties.

Mechanic's liens were filed against the church property in July and December, 1870, and judgment rendered in favor of the lienors on all the liens, September 14, 1871; execution was issued September 23, 1871, and the property was sold thereunder to plaintiff May 25, 1872, for $550. Sheriff's deed to plaintiff, November 23, 1872.

On March 27, 1872, defendant instituted summary proceedings before a district justice, to dispossess Thrall, upon the allegation that he, Frankfield, was landlord, and Thrall a tenant of the property holding over, after having made default in the payment of rent, etc. Thrall made default, and the marshal put defendant in possession; and he continued in possession until he sold it, in March, 1873, for $52,500.

Plaintiff filed her complaint to enforce her equitable lien upon the property, and demanded payment of the amount advanced by her, or for a sale of the property, and the satisfaction of defendant's lien, and payment to her of the residue.

The action was tried at Special Term and judgment rendered for the plaintiff.

*Charles Tracy,* for the appellant.

*Henry S. Burnett,* for the respondent.

BRADY, J.:

The right of the plaintiff to recover in this action depends upon the right or estate of Thrall in the premises mentioned in the complaint. Thrall entered into the possession of them under his lease from the defendant, and under a promise that they would be sold to him at a price named; and in due time the agreement for the sale was prepared and executed by him and the defendant, his lessor.

Thrall proceeded to build a church after his lease was given him, and prior to the contract of purchase, and when the contract was signed a large sum had been expended. The contract executed during the running of the lease, and therefore before its expiration, provided as follows : " Unless this contract shall be carried out by Thrall by the first of June, 1871, the same and every thing herein contained shall thenceforth be null and void and of no further effect."

Thrall was not ready to perform his agreement at the time designated ; at all events, he did not appear to do it, and never at any subsequent time offered to do so. The defendant was ready. The question arises here at once whether, the default having been made, Thrall had any rights under the contract, which, for aught that appears, might be enforced ?

The contract itself determines the question. The default rescinded it unless the defendant waived the advantage gained. The authorities are not in conflict on the subject. (*Canfield* v. *Westcott*, 5 Cow., 270 ; *Mancius* v. *Sergeant*, id., 271 ; *Church* v. *Ayres*, id., 272.)

The estate secured by Thrall, by the contract, was equitable because it depended wholly upon the performance of the agreements on his part to be performed before any absolute interest vested ; he forfeited all under its terms unless he observed and fulfilled his engagement. (Cases, *supra.*)

The contract thus interpreted, the question presénts itself, whether its execution had the effect of destroying, by merger, the relation of landlord and tenant existing between the parties, Thrall and the defendant, at the time the lease was signed.

The general proposition bearing upon the subject is, that the equitable is merged in the legal estate, and not that the legal is merged in the equitable. The legal is the greater and the equitable the lesser, and it is the greater interest which absorbs.

It is said that the doctrine of merger is not favored at law or in equity, and often, if not always, depends upon the intent of the parties. (*Millard* v. *McMullin*, 12 N. Y. S. C. R. [5 Hun], 578 ; *Van Nest* v. *Latson*, 19 Barb., 604 ; *James* v. *Morey*, 2 Cowen, 246.)

If the intent which legitimately springs out of the transactions is to determine the question, the intent·was that Thrall should become

the owner as well as the lessee of the premises; he was to enjoy the premises as a lessee with the future ownership for which the parties had agreed and which the defendant was willing should happen. He had, it may justly be said, some misgiving of Thrall's ability to carry out the contract of purchase, because of the financial troubles existing with regard to the church, and in view of them determined that, as to the sale, he should not be burdened by an existing agreement unless he had the power to destroy it at once. This he secured by the clause declaring it void on the failure of Thrall to complete, at the time appointed. But he did not. Nor did Thrall intend by such agreement, that their relations should change and all be forfeited — the term as well as the improvements. The right to acquire the higher title was consistent with the design of the parties to hold the lease intact and untouched by the contract of sale. The legal sale, if the intention was not apparent, would lead to the same result. A deed would seem to be necessary to change the estate of Thrall, who was in possession, under his lease, before the agreement was executed. (*Millard* v. *McMullin*, *supra*.) Indeed, we have the fact that after the contract was made, rent was paid and received under the lease, and this bears with much force on the question of intent.

The learned justice, at Special Term, based his decision in favor of the plaintiff on the proposition that the contract operated as a merger of the lease, and that the defendant, having dispossessed Thrall as a landlord, had improperly acquired possession of the premises, which could only be done by or through Thrall's failure to complete under the contract. The difficulty, aside from the views already expressed, in sustaining this conclusion, is that if the contract had the effect asserted, the defendant had the right, on Thrall's failure to perform, to take peaceable possession of the premises at once, and without any legal proceedings, to remove the seeming effect of the contract. He had this right because the contract became void and every thing therein contained null, unless he waived the forfeiture. He did not do so; he regarded the contract as at an end and proceeded to obtain possession for the non-payment of the rent due; thus while enforcing his renewed power as owner by Thrall's failure, admitting the relation of landlord and tenant to be still existing, in which Thrall acquiesced.

The facts and circumstances thus considered from a legal standpoint, result in the conviction that the defendant did not, by any act of his, expose himself to any action, either by Thrall or any person deriving interest through or by him.

If the facts and circumstances are regarded from an equity standpoint, the defendant is not bound to do what he is asked to do. Thrall, under the lease, commenced the building. It is true that he did so under a belief that he could secure the fee of the land. In this he was not disappointed. The defendant carried out his promise and gave him the contract; he accepted it upon the terms and conditions contained in it, and when he had the opportunity to perfect the ownership of what he had voluntarily placed upon the defendant's land he failed to do so, and failed equally to pay the rent, or seek relief until the premises were sold. There is present no element of fraud or wrong, except such as may be inferred from the appropriation of the improvements of Thrall, but these were not taken wrongfully. They were acquired by the exercise of legal rights. The defendant did not urge the expenditures, nor did he refuse, when asked to make the necessary agreement, to perfect their value in the person who designed to secure them. Whatever disadvantage followed was not his fault but that of his tenant and contemplated grantee. The learned counsel for the plaintiff invokes the doctrine stated in Perry on Trusts (§ 234), that the *cestui que trust* (the vendee) has an equitable estate in the land to which his trust attaches; an estate which he may sell, assign or devise; but a vendor, having only a lien for his purchase-money, has no estate in the land; it is neither *jus in re* nor *jus ad rem*. It is a mere possibility of a right until it is established by a final decree of a court in each case, and from these principles draws the conclusions that the land is burdened with the sums expended upon it, and subject to which the defendant was reinvested with the whole estate.

There are, however, no facts warranting the application of the rule, for the reasons already assigned. It will have been noticed that, by the written contract, the purchase was to be completed on the first of June, 1871, and that the proceedings to dispossess were not commenced until March, 1872, nearly nine months after the failure of Thrall to complete, and no effort was made to carry out the agreement by Thrall or any one on his behalf.

The equity in favor of the vendee, in the nature of a trust, will not exist where the purchaser, by his own fault, abandons the contract, or where the contract is for any cause illegal. (Perry, *supra*, § 231.)

In this case the contract was abandoned by Thrall because he did not seek to preserve it from the forfeiture, which occurred when he failed to complete on the first of June. Under all the circumstances it does not seem possible to sustain the judgment herein, and it must be reversed.

Davis, P. J., and Daniels, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.